UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROY ABRAHAM, ET AL.                     CIVIL ACTION NO. 04-0044

Versus                                  SECTION "I" (5)

B.J. SINGH, ET AL.

## PLAINTIFFS OPPOSITION TO MOTION TO DISMISS
## PURSUANT TO FRCP 9(b) and 12(b)

**MAY IT PLEASE THE COURT;**

Plaintiffs are 220 Indian nationals who were lured by Defendants from their home country to New Orleans, Louisiana, between September of 2000 and December of 2002 based on false promises of guaranteed employment and assistance with the immigration and naturalization process. These false promises were in reality a sophisticated and elaborate scheme to bilk Plaintiffs out of substantial sums for the "opportunity" of employment for Defendant Chad Chandler ("Chandler") and to create a captive labor force for Chandler and his company, Falcon Steel. The substance of the scheme, in which Chandler was a principal actor, involved (1) false representations for the purpose of misleading Plaintiffs to believe they would be employed in New Orleans at $14.00 an hour in skilled positions; (2) collection of substantial fees between $10,000.00 and $20,000.00 from **each** Plaintiff for the stated purpose of securing this employment; (3) processing of immigration paperwork with Chandler and his co-conspirator (and co-defendant) Terry Forrester ("Forrester") acting as sponsors for Plaintiffs' work visas; (4) inducing Plaintiffs to travel to and relocate in New Orleans; and, (5) subcontracting or farming employment of Plaintiffs into skilled labor positions with Chandler taking an unconscionable commission, with accompanying threats, intimidation and harassment for any Plaintiff who dared complain about the false promises.

1

Chandler now seeks dismissal of Plaintiffs' case against him, having aggressively filed the instant motions before being served with the lawsuit, on the implied basis he is unaware of the allegations against him and unable to defend himself accordingly. On the contrary, the factual predicate underlying Chandler's involvement in the fraudulent scheme is sufficiently detailed in the Complaint – including conduct of criminal activity within the Eastern District of Louisiana. For the reasons that follow, Chandler's motions are not well founded, at most raising issues that may be cured by an amendment of the pleadings.

## Background Facts

### MUMBAI (BOMBAY) FACTS

On November 16, 2000 and November 20, 2000 H2B visas were issued by the American Consulate in Mumbai, India to approximately 48 Indian nationals. The visas were sponsored by Falcon Steel Structures. These Indian nationals, hereinafter "workers", were recruited by B.J. Singh, who claimed to be an agent for Falcon Steel Structures during the Summer and Fall of 2000. Recruitment was done via newspaper advertisements and over the telephone and by word of mouth.

The workers initially met B. J. Singh in his office in Bangalore, India, Kerala State, India, Chennai (Madras), India and in Mumbai, India. The workers were told by B. J. Singh that he was an agent of Falcon Steel; that Falcon Steel was a large reputable company; that the wages would be $14 per hour, $21 per hour overtime; that the job would be for 3 years; that room, board, medical and transportation would be provided and that permanent residency status (a green card) would be obtained. Many of the men recruited at this time had previously worked at Avondale Ship Yards in Avondale, Louisiana and been provided

benefits similar to those being promised by B. J. Singh. The workers were required to pay a service fee of between $7,000.00 to $10,000.00 to obtain the promised job.

The workers were then introduced to Terry Forrester in Mumbai who claimed to be a lawyer for Falcon Steel Structures. Forrester obtained visas for the workers and reassured them that the promises made by B.J. Singh were true. The workers were encouraged by B.J. Singh to borrow amounts of money that B. J. Singh and Forrester knew could never be repaid unless the workers did in fact work in the United States.

The workers were transported to the United States on December 11, 12, 28, 2000 and met by Terry Forrester upon arrival in the United States. Terry Forrester transported the workers to Houma, Louisiana where they met with Chad Chandler, the owner of Falcon Steel Structures. Terry Forrester and Chad Chandler told the men that they must be patient because there were no jobs for them as previously promised. No jobs were provided for approximately three months and, after the first month, no food or money for food was provided. The workers were warned not to seek employment, or, in some cases, leave the Hotel without the permission of Chad Chandler. The workers were threatened and intimidated when they complained about broken promises.

## DUBAI FACTS

On or about April 20, 2001 the Defendants B. J. Singh, Chad Chandler and Terry Forrester placed advertisements in Dubai soliciting for "Opportunities in U.S.A." and stating specifically: "Our client, one of the major companies in the USA requires the following - First Class Flux Core Welders (MIG) ... First Class Fitters..." The advertisement promised "US $14 per hour minimum work 40 hours per week." and the candidates are told they will

3

be tested by a "client rep" during the "1st week of May in Dubai. The work visa will be processed immediately after selection."

Word of the "opportunity" spread among the workers, who followed up on the advertisement by telephone and met with B. J. Singh, Terry Forrester and Chad Chandler in Dubai during May and June, 2001. At individual interviews and group meetings during skill testing, Singh, Chandler and Forrester promised that the selected candidates would be paid $14 per hour, $21 per hour overtime for three years; medical, room and board also provided. Singh, Chandler and Forrester also promised the selected candidates that they would be "Americans" and would be able to obtain permanent residency status and bring their families to the United States.

Forrester once more presented as the lawyer for Falcon Steel, Singh as the Agent and Chandler as the owner, reassuring the workers that the opportunity was "golden." The selected candidates were told a service fee of between $7,000.00 to $16,000.00 would be required. Singh, Chandler and Forrester encouraged the workers to obtain loans to cover the service fees knowing that the loans could not be paid back except on American wages. In May and June, 2001 Forrester arranged for the workers to obtain H2B visas at the American Consulate in Dubai.After the service fee was paid in full the workers were transported to New Orleans during June and early July, 2001.

Once in New Orleans the workers were transported to Houma, Louisiana where they were warehoused in a Hotel and told by Forrester, Chandler and other Falcon employees that there were no jobs and to be "patient," not leave the Hotel and not try to obtain work with other employers. The workers were not provided food or medical attention as promised.

4

The workers were not provided jobs or wages as promised. The workers were warned not to approach other prospective employers. The workers were threatened and intimidated if they complained about broken promises.

## SINGAPORE FACTS

Sometime during the Summer of 2001 while recruiting was going on in India and Dubai and Singapore via newspaper advertisements and telephone solicitation, the American Consulate in Mumbai became more stringent with Forrester, Singh and Chandler and began denying visa applications sponsored by Falcon Steel Structures. This required Forrester, Singh and Chandler to shift their immigration efforts to the American Consulate in Singapore where H2B visas were more obtainable.

The Singapore workers were comprised primarily of men who could not "take advantage" of earlier promises made by Singh, Chandler and Forrester in India and Dubai as noted above. Those promises were: a job with a large American Steel Company; $14 per hour with $21 per hour overtime; 3 years continuous employment; room, board and medical provided and, of course, a green card. These workers watched as previous groups did in fact get visas and did go to the United States to work. Singh, acting as the primary recruiting agent for Falcon Steel, continued to encourage and solicit these men for work at Falcon Steel.

As the "left behind" workers responded to promises, Singh directed them to go to Singapore where they were literally "warehoused" 60 men to a room and in some cases forced to work without any wages whatsoever. The average stay in Singapore was 4 months.

In June and July of 2002, Forrester and Singh were successful in obtaining H2B visas. In July and August 2002 the Singapore workers transported from Singapore, to India to New Orleans. In New Orleans, the workers were picked up and transported to Houma where they

5

discovered that there was no immediate work. As before, promises made by Singh, Forrester and Chandler were broken as to job availability, wages, medical assistance and benefits, lodging and food. As before, the workers were warned not to complain as to these broken promises or they would be sent home.

Those workers who obtained visas in Singapore paid a service fee to Singh, Chandler and Forrester of approximately $14,000.00. Singh, Chandler and Forrester encouraged the workers to take loans on any terms knowing that the workers would not be able to pay those loans back unless they were allowed to work at American wages.

Chandler in particular regularly and continuously threatened not only the men who arrived from Singapore but the previous and subsequent groups of workers. Chandler knew that none of the workers had an avenue of escape and used this knowledge to create and control a captive labor pool by threats of legal action or violence.

## CHENNAI (MADRAS) FACTS

The last groups to enter the United States arrived in November and December, 2002 with H2B visas issued in Chennai (Madras), India in late October, 2002 (Again, after the Mumbai Consulate refused to grant Falcon sponsored visas. These groups were recruited by B. J. Singh with promises of working for a major American company, wages at $14 per hour and $21 per hour overtime, medical, food and lodging provided by the employer with a green card at the end of the rainbow. Some workers were recruited by telephone, some by newspaper advertisements and some by word of mouth.

Some of the workers had been to previous meetings noted above in Dubai and in India where they had met and/or seen Singh, Chandler and Forrester standing beside each other, ratifying each other's actions, words and promises, and smiling.

A service fee of approximately more than $14,000.00 was required of these workers. Chandler, Singh and Forrester encouraged the workers to take these loans knowing that they could not be repaid unless there was indeed a 3 year job at $14-$21 per hour at Falcon Steel. When the fees were paid, the workers were transported to New Orleans and from New Orleans to Houma, where they were told to stay in a Hotel, since there were no jobs. The Chennai group did not, in most cases, ever get work through Falcon Steel. The Chennai group did not, in any cases, have food or medical assistance provided. Chandler knew the Chennai group had no avenue of escape due to their debts and used this knowledge to add to his captive labor pool, controlling by threats and intimidation, telling workers who complained that "no Indian dogs are allowed in my office," and constantly referring to the workers as "F--king Indian dogs."

## Law and Argument

While it is true that a Defendant is entitled to be placed on notice of particular instances of fraudulent conduct, it is equally true that Plaintiffs need only give the "who, what, when, where and how of the alleged fraud" to comply with FRCP 9(b). *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992). It is not necessary that Plaintiffs allege every possible fact in support of their case, particularly when facts relating to the fraud are "peculiarly within the perpetrator's knowledge." *United States ex rel. Doe v. Dow Chemical Company*, 343 F.3d 325, 330 (5th Cir. 2003).

Despite Chandler's belief that the Complaint is lacking, the pleading alleges that Chandler, conspiring with his co-defendants between December 13, 2000 through January, 2003, promised Plaintiffs employment with Falcon Steel Structures at $14.00 per hour for a minimum

7

of three (3) years. Complaint ¶¶ 11-13. Additional promises of health insurance, and a "green card" signifying permanent resident status, induced Plaintiffs to each pay from $10,000.00 to $20,000.00 for the privilege of coming to New Orleans to work. Complaint ¶¶ 13-14. Plaintiffs allege these representations were "empty and false" and were made for the purpose of inducing the Plaintiffs to pay the exorbitant fees, with knowledge that once the Plaintiffs paid the fees they would be in a financially desperate situation such that they were effectively in a state of debt bondage and involuntary servitude. Complaint ¶¶15-17. The Complaint further alleges that the Plaintiffs relied on these misrepresentations and false statements in paying the fees and did not discover Chandler's fraudulent scheme until they arrived in Louisiana and discovered Falcon Steel could not employ them as promised. Complaint ¶¶17-20. This situation, it is expressly alleged, created a "dependent and terrorized labor pool" where the Plaintiffs were forced to work in temporary positions, with substantial portions of their wages being confiscated by Chandler for his continued sponsorship of Plaintiffs' immigration status. Complaint ¶¶22-23. Chandler's scheme against Plaintiffs also included threats of deportation, physical violence, surrendering of passports and other travel documents and threats of imprisonment. Complaint ¶¶ 21, 23, 25.

Chandler's position in brief that the Complaint is "utterly devoid of specific allegations of the time, place, and content of defendants' alleged fraud and/or false representations" and "how each plaintiff was defrauded" appears to miss the specific allegations of the Complaint highlighted above. Indeed, only the *specifics* of what Chandler actually received as compensation for his participation in the scheme is missing; facts which are peculiarly within the knowledge of Chandler to be developed through discovery. *Dow, supra*. However, general allegations of Chandler's "benefit" from the scheme through the extortion of fees to sponsor the Plaintiffs and through Chandler's receipt of a portion of the fees paid by Plaintiffs is clear from

the Complaint. As such, the Complaint fairly and adequately apprises Chandler of the particulars of Plaintiffs claims.

## Venue

As indicated above, a substantial part of the events giving rise to the instant suit occurred within the jurisdiction of this Court. Particularly, the employment contract was to be performed in the Eastern District of Louisiana, the workers were transported to the Eastern District of Louisiana and the workers were forced to live in the Eastern District of Louisiana.

Of course, the burden of establishing the propriety of venue rests with Plaintiff. *Dupree v. Valero Energy Corporation*, 2003 WL 22466234, *1, (E.D. La. 2003) To this end, the allegations of the Complaint are taken as true, unless there will be an evidentiary hearing on the matter. *Langton v. Cbeyond Communications, L.L.C.*, 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003).

In this case, Chandler argues in brief that his involvement in the recruitment of Plaintiffs "appear[s] to have occurred in Baton Rouge, which is within the geographic confines of the Middle District of Louisiana." (Δ Brief, p. 4). With this maneuver, Chandler argues that this statement, vaguely supported by his affidavit, effectively controverts Plaintiffs' venue allegations. Under Chandler's analysis, therefore, the Court need not accept Plaintiffs' venue allegations as true.

It is noteworthy, though, that Chandler never denies Plaintiffs' assertion that the "acts and omissions complained of culminated in the Eastern District of Louisiana" or that the activities of Chandler outlined in the Complaint were "purposely directed at [the Plaintiffs] in the Eastern District of Louisiana." Complaint ¶¶ 1-10. Thus, while Chandler may attempt to controvert the fact alleged and thus arguably "raise the bar" for Plaintiffs, his effort falls far

short. For instance, Chandler does not say he never directed any of the acts or omissions described in the Complaint at the Plaintiffs in the eastern district of Louisiana. Chandler does not testify that the acts and omissions described in the Complaint did not culminate (*i.e.*, <u>cause harm</u>) in the eastern district of Louisiana. Rather, he generically asserts that "the majority of activity in connection with [his] recruitment [of Plaintiffs] took place in the offices of Falcon Steel in Baton Rouge, Louisiana." Chandler's Affidavit ¶ 6.

If Chandler desires to controvert the venue allegations of the Complaint, he certainly may try. Instead, he chooses to dance around the issue by vaguely asserting that *the majority of his activity* was undertaken in Baton Rouge. Whatever the phrase "majority of his activity" means, the Court should note that the statements in the affidavit simply do not contest the Plaintiffs' allegations whatsoever. Under the circumstances, Chandler has failed to present any evidence to controvert the positive allegations of the Complaint that a substantial portion of the acts and omissions giving rise to the Complaint occurred in the eastern district and that Chandler directed his activities at the forum district.

Notwithstanding, Plaintiffs attach extensive affidavits, and adopt by reference the contents of those affidavits, from 170 of the 220 Plaintiffs detailing the contacts within the eastern district. Counsel for Plaintiffs are diligently working to complete affidavits of the remaining 50 Plaintiffs, and anticipate these will be completed by the end of April or early May, 2002. An amendment of the pleadings will be requested to further clarify venue issues, as well as other issues discussed herein. However, for purposes of this motion, the venue allegations of Plaintiffs' original Complaint remain clear, sufficient and un-rebutted.

## Civil RICO and Pendent Claims

Plaintiffs concede that the civil RICO claims asserted in the Complaint must be amended to properly set forth the racketeering enterprise between and among the defendants and to more precisely set forth the pattern of racketeering activity. An appropriate time is requested to do this. The remedy at this early stage of the proceedings is to allow such amendment, not as Chandler's argues, to dismiss the Complaint. In fact, Plaintiffs have filed a Motion with the Court expressing a need to amend the pleadings. (Rec. doc. 7)

Plaintiffs also have asserted multiple claims arising under federal law, federal common law and (perhaps) under state law. Nowhere in the Complaint do Plaintiffs contend that the applicable law to this controversy is Louisiana state law. This lawsuit has connections with multiple jurisdictions with an interest in the outcome. For example, Chandler claims to be a Mississippi resident working in Louisiana who made representations while in India to induce the Plaintiffs to come to the United States. Thus, conservatively this fact pattern involves connections with at least two other jurisdictions and the possibility of application of foreign law. Chandler's assumption that Louisiana law governs this controversy is premature. To the extent Plaintiffs need to formally assert this point, a modicum of time to amend the Complaint is requested.

Plaintiffs also assert multiple violations of federal law which are actionable standing alone and form predicate acts of the civil RICO claim. Chandler's central focus in requesting that this Court engage in a wholesale dismissal of these serious allegations of the Complaint again evidences a convenient ignorance of the allegations against him. This Court need look no

11

further than Chandler's own affidavit submitted in support of motions to find the necessary "state action" Chandler claims is lacking from the allegations related to federal law violations.

Chandler's affidavit clearly states that he traveled to India and conducted recruitment of Indian nationals pursuant to the H2-B program of the INS. Chandler Affidavit, ¶ 6. The Complaint specifically alleges that Chandler used his sponsorship of Plaintiffs in the H2-B program to extort money from them. Complaint ¶¶ 21-22. Chandler also used his position as Plaintiffs' "sponsor" to threaten Plaintiffs with deportation when they complained of his fraud. Complaint ¶ 25. Clearly, the necessary "state action" is present to overcome Chandler's objection to answering for his actions under federal law.

Concerning the pendent claims of intentional infliction of emotional distress, Chandler's position that the allegations related to his conduct are insufficient to establish a cause of action is incorrect. Assuming *arguendo* that Louisiana law governs this dispute, Chandler's claim that the Complaint fails to allege that his conduct was <u>extreme and outrageous</u> is patently absurd. In addition to engaging in racketeering activity, Chandler is accused of extorting money through threats of violence, abuse of legal process, and misuse of the immigration laws to further his fraudulent scheme. It seems self-evident that this conduct is extreme and outrageous. Clearly, Plaintiffs' allegations meet the pleading burden of placing Chandler on notice of his conduct that Plaintiffs find extreme and outrageous.

## CONCLUSION

For the above and foregoing reasons, Chandler's Motions to Dismiss pursuant to FRCP 9(b) and 12(b) ought be DENIED.

Respectfully submitted,

_____
B. KENT FELTY, OBA NO. 15702
1405A JEFFERSON AVE.
NEW ORLEANS, LA. 70115
PH. (504) 895-1525
FAX (504) 895-1589

and

BRENT D. BURLEY, LA. BAR NO. 22744
FENET & ANDERSON
8461 UNITED PLAZA BLVD., SUITE 200
BATON ROUGE, LA. 70809
PH. (225) 926-5500
FAX (225) 926-5577

and

DAVID CAPASSO
407 S. BROAD ST.
NEW ORLEANS, LA. 70119
(504) 822-3930
FAX (504) 822-5171

### CERTIFICATE OF DELIVERY

I, B. Kent Felty do hereby certify that I hand delivered a copy of the foregoing to opposing counsel, at the offices of Sharp, ~~Henry~~ et al. on March 14, 2004.

_____
B. Kent Felty

SEE RECORD FOR

EXHIBITS

OR

ATTACHMENTS

NOT SCANNED