UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

**U.S. DISTRICT COURT**
EASTERN DISTRICT OF LOUISIANA

FILED    JUN 2 8 2004

**LORETTA G. WHYTE**
CLERK

| | | |
|---|---|---|
| ROY ABRAHAM, ET AL., | * | CIVIL ACTION |
| | * | NO. 04-0044 |
| Plaintiffs, | * | |
| | * | SECTION I (5) |
| VERSUS | * | |
| | * | JUDGE AFRICK |
| B.J. SING, individually and d/b/a NTS | * | |
| SKILLFORCE RESOURCES, TERRY | * | MAGISTRATE JUDGE CHASEZ |
| FORRESTER, individually and d/b/a | * | |
| LABOR CONSULTANTS | * | JURY TRIAL REQUESTED |
| INTERNATIONAL and CHAD | * | |
| CHANDLER, individually and d/b/a | * | |
| FALCON STEEL STRUCTURES and | * | |
| COMEFORD ENTERPRISES, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## FIRST AMENDED COMPLAINT

COME NOW the above named Plaintiffs, by and through their attorneys, B. Kent Felty and Brent D. Burley, and for their First Amended (and superceding) Complaint against Defendants, state and allege as follows:

## I. JURISDICTION AND VENUE

1.      <u>Federal Question Jurisdiction</u>. Pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction as this action arises under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq., and the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595. The Court has jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367.

Fee_____
Process_____
X  Dktd_____
CtRmDep_____
Doc.No._____

1

2.   Venue.  This action is based on various acts of fraud, breach of contract and racketeering

activity by Defendants that were committed within this judicial district.  Moreover, all

Defendants transact business in the Eastern District of Louisiana and may be summoned

to this judicial district pursuant to 18 U.S.C. § 1965 [nationwide jurisdiction and service

of process in civil RICO cases].  Therefore, venue is proper in the Eastern District of

Louisiana pursuant to 28 U.S.C. §§ 1391(a)(2), (b)(2) and 18 U.S.C. § 1965.

## II. PARTIES

3.   All named Plaintiffs are citizens of India.

4.   Defendant B.J. Singh ("Singh") is an alien, believed to be a Canadian citizen, doing

business in Louisiana in a systematic and continuous fashion.

5.   Defendant B.J. Singh's activities purposefully directed at the Eastern District of

Louisiana give rise to the liabilities described herein.

6.   Defendant Terry Forrester ("Forrester") is domiciled in the State of Idaho, doing business

in Louisiana in a systematic and continuous fashion.

7.   Defendant Terry Forrester's activities purposefully directed at the Eastern District of

Louisiana give rise to the liabilities described herein.

8.   Defendant Chad Chandler ("Chandler") is domiciled in the State of Mississippi, doing

business in Louisiana in a systematic and continuous fashion.

9.   Defendant Chad Chandler's activities purposefully directed at the Eastern District of

Louisiana give rise to the liabilities described herein.

10.  Defendant Falcon Steel Structures, Inc. ("FSS") is a corporation organized under the laws

of Mississippi (Company I.D. No. 680446), with its principal place of business at 1796

Rifle Range Lane, Centreville, Mississippi 39631.  FSS may be served with process by

2

delivering citation to its agent for service of process, Louisiana Corporate & Registered Agent Services, Inc., 3867 Plaza Tower Dr., 1ˢᵗ Floor, Baton Rouge, Louisiana 70816 in accordance with Rule 4 of the Federal Rules of Civil Procedure.

11.     Defendant Labor Consultants International, Inc., is limited liability company organized under the laws of Idaho (Compnay I.D. No. W12924) with its principal place of business at 1810 Schneidmiller Avenue #120-A, Post Falls, Idaho 83854. Labor Consultants International, Inc., may be served with process by delivering citation to its agent for service of process, Terry Forrester, 1810 Schneidmiller Avenue #120-A, Post Falls, Idaho 83854 in accordance with Rule 4 of the Federal Rules of Civil Procedure.

12.     Defendant NTS Skillforce Resources is an alien entity formed by Singh and domiciled in Canada and amenable to service of process through Singh.

13.     Defendant Comerford Enterprises (incorrectly referred to in the original Complaint as "Comeford Enterprises") is a dissolved corporation, formerly domiciled in Mississippi and formed by Defendant Chad Chandler and amenable to service of process through Chandler.

### III.  PRELIMINARY STATEMENT

14.     Beginning shortly before November 16, 2000, and continuing through the present, Defendants maintained continuous communication and interacted with the Plaintiffs as a group and/or individually in the following ways and manners, constituting a "scheme" or "racketeering scheme," and as more fully set forth in Plaintiffs' affidavits filed in opposition to Defendant Chandler's Motion to Dismiss, which affidavits are incorporated herein by reference.

15.   To implement the scheme, Defendants personally traveled to India, Dubai and Singapore to recruit Plaintiffs' employment for FSS.

16.   During the recruitment process, Defendants promised Plaintiffs fulltime gainful employment in Louisiana for FSS pursuant to the following terms: (1) wages would be paid at the rate of $14.00 per hour for the first forty hours worked in a one week period; (2) wages would be paid at the rate of $21.00 per hour for all work in excess of forty hours worked during a one week period; (3) medical benefits and health insurance; (4) paid housing; and, (5) permanent resident status.

17.   Plaintiffs were promised by Defendants that the period of employment would be at least two years in duration, with some Plaintiffs promised three years of employment.

18.   In return, Defendants demanded and received between $7,000.00 and $20,000.00 from each Plaintiff.

19.   These representations and promises made by Defendants were empty and false and made with the intention of defrauding Plaintiffs to gain an unfair economic advantage.

20.   Defendants made the promises and misrepresentations for the purpose of inducing Plaintiffs to pay exorbitant fees and commissions to the Defendants which Defendants knew could never be paid back unless the promises of employment were honored, and which debt would effectively bond the Plaintiffs to Defendant.

21.   Plaintiffs reasonably relied on the misrepresentations and promises of Defendants to their detriment and did pay the Defendants fees and commissions of between $7,000.00 and $20,000.00 per Plaintiff.

22.   Plaintiffs sold property and/or borrowed money, often at usurious rates, to pay these exorbitant and unconscionable sums to the Defendants for the opportunity to work for

4

FSS and live permanently in the United States of America, all predicated upon Defendants' false promises and misrepresentations.

23.    Defendants further represented to Plaintiffs that Defendant Forrester was an attorney at law and would handle all immigration matters, visa renewals and would obtain permanent residence status in the United States for the Plaintiffs, all upon Plaintiffs payment of up-front fees and agreement to work for FSS in Louisiana for a period of two to three years.

24.    Defendants did in fact obtain H2B visas for the Plaintiffs from American Consular officials in India, Dubai and Singapore between November 2000 and December 2002 by misrepresenting to those Consular Officials as to each and every necessary prerequisite for those visas, including but not limited to the condition and needs of the South Louisiana economy and the ability and intention of FSS to employ and pay the workers.

25.    FSS appeared as the sponsoring employer on each Plaintiffs' H2B work visa.

26.    Defendants arranged for transportation of Plaintiffs from India to New Orleans, Louisiana, and Houma, Louisiana, an integral step in the Defendants' scheme.

27.    When Plaintiffs arrived in the United States their travel documents and passports were taken by Defendants in furtherance of the racketeering scheme.

28.    After arriving in Louisiana, Plaintiffs learned that FSS was not a manufacturing facility as had been represented by Defendants and had no employment for any Plaintiff.

29.    Indeed, despite the promises of Defendants to Plaintiffs and identical representations to United States Immigration Officials, FSS was not capable of employing any Plaintiff.

30.    Instead, FSS *hoped* to place Plaintiffs for work with Quality Shipyards of Houma, Louisiana, or other third parties, with the intention of skimming money from each

Plaintiff – facts never made known to Plaintiffs during the recruitment process nor agreed to by any Plaintiff.

31. The Plaintiffs were housed at a hotel in Houma, Louisiana, and ordered to remain until work could be found.

32. In most cases little or no food was provided and in no case was medical attention provided. The Plaintiffs suffered severe mental trauma and emotional distress under these conditions.

33. When some Plaintiffs were eventually placed for employment at Quality Shipyards (many months after arriving in the United States) they were not paid the promised rate of $14.00 per hour/$21.00 per hour for overtime; instead they received substantially less.

34. Further, Defendants assessed those Plaintiffs who were fortunate enough to eventually be employed with arbitrary "fees", which were deducted from Plaintiffs' paychecks without consent and without any accounting or justification for Defendants' self-help declaration and capture of these funds owed Plaintiffs from their labor.

35. These arbitrary fees were claimed by Defendants to be a debt owed by Plaintiffs.

36. In reality, these fees had no legitimate basis and were simply another instance of financial fraud practiced against Plaintiffs by Defendants.

37. Plaintiffs were compelled to work to pay off these so-called debts, illegally assessed by Defendants as part of their continuing scheme, by threats and legal coercion, including but not limited to physical intimidation; brandishing/carrying of weapons (Chandler); threats of manipulation of visa status and deportation; confiscation of passports and immigration papers; threats of abuse of legal process, prosecution and arrest. The

severity of the consequences of not working compelled Plaintiffs to continue to serve as Defendants' forced labor pool.

38.   Despite the fact that Defendants could not employ the first group of Plaintiffs in fulfillment of the employment promises, Defendants continued to recruit, take money, falsely obtain visas, make promises and transport additional workers (also named Plaintiffs herein) to New Orleans, Louisiana, and Houma, Louisiana, through at least December, 2002.

39.   When Plaintiffs became desperate due to the intolerable living conditions and lack of gainful employment, they were told by Defendants to find their own jobs, in violation of their H2B visa, on the condition that if they did obtain work, they report that job to Defendants.

40.   Some Plaintiffs were arrested by the Immigration Service for seeking employment in violation of their work visas, yet Defendants refused to divulge to the Immigration Service the true nature of the Plaintiffs' plight.

41.   When Plaintiffs have complained about their plight to Defendants, Plaintiffs have been threatened with deportation, physical harm and economic harm; all to the end that Plaintiffs continue to be victimized by Defendants conduct.

42.   Thereafter, Defendants demanded from Plaintiffs an additional $5,000.00 (in addition to the illegal fees already charged and collected) to apply for a permanent labor certificate rather than renewed H2B visas and permanent resident status as he had previously promised Plaintiffs. Many Plaintiffs paid these additional funds to Defendants by checks drawn upon financial institutions located in the Eastern District of Louisiana.

7

43. By threats to deport, manipulate work visa status, threats of violence, creation of false debts, and threats to abuse the legal process directed to Plaintiffs, Defendants created a psychological state of total dependence, control and terror in the workers. This conduct was for the sole purpose of furthering Defendants' scheme by continuing to maintain domination and control over Plaintiffs.

44. Defendants, having created a dependent and terrorized labor pool, then "farmed" the Plaintiffs out as temporary workers when opportunities arose and defalcated a disproportionate, illegal and unconscionable portion of the Plaintiffs wages, all without Plaintiffs' consent.

45. This "farming out" to third party employers was completely contrary to the promises and representations of Defendants that Plaintiffs would be gainfully employed on a full time basis by FSS.

46. When the Plaintiffs attempted to gain employment apart from FSS, they were terrorized, threatened and hounded by Defendants and prospective employers were discouraged from hiring them.

47. Companies with whom one or more of the Defendants contracted terminated Plaintiffs as a result of Defendants demands, depriving these Plaintiffs of mitigating income.

48. The Plaintiffs' families in India began receiving threats from creditors on loans that could not be repaid because the promised steady flow of income from the United States never materialized. In some cases family members warned Plaintiffs that they would be killed if they returned home.

49.   In some cases the Plaintiffs were reduced to eating out of trash cans, begging for leftovers at local restaurants and became homeless and destitute, all as a direct result of the actions of Defendants complained of herein.

## IV.  CAUSES OF ACTION

## COUNT I – HUMAN TRAFFICKING

50.   Paragraphs one (1) through forty-nine (49) are incorporated by reference.

51.   Defendants, acting in concert, violated The Trafficking Victims Protection Act of 2000 (TVPA); 22 U.S.C. 7101 et seq. and the Trafficking Victims Protection Reauthorization Act of 2003, 18 U.S.C. § 1595.

52.   Defendants knowingly, willfully and intentionally recruited, harbored, transported, provided or obtained the Plaintiffs for labor or services through the use of fraud, force and coercion for the purpose of subjecting Plaintiffs to involuntary servitude, peonage, debt bondage or slavery, all for Defendants' financial gain.

53.   Damages.  Plaintiffs have been damaged by the conduct described at Count I, which damage is a direct result of the scheme perpetrated against Plaintiffs by Defendants, in an amount exceeding $75,000.00 per Plaintiff.

## COUNT II – BREACH OF CONTRACT – FRAUDULENT INDUCEMENT

54.   Paragraphs one (1) through forty-nine (49) are incorporated by reference.

55.   Defendants, acting in concert, guaranteed a two to three year job to each Plaintiff at minimum $14.00 per hour, plus overtime wages at the rate of $21.00 per hour, room, board and medical benefits, as well as continued immigration sponsorship until each Plaintiff obtained permanent residence status in the United States.

56.   Defendants' offer was accepted by each Plaintiff and consideration was paid in good faith in the form of a service fee of between $7,000.00 and $20,000.00, competency testing, resignation from existing jobs with forfeiture of benefits by Plaintiffs and travel to the United States, all in good faith reliance on Defendants' promises and representations.

57.   The contract between the parties formed by offer and acceptance, with valuable consideration paid by Plaintiffs as their part of performance, was broken and breached by Defendants.

58.   Plaintiffs were fraudulently induced to enter into the employment contract with FSS.

59.   FSS misrepresented the existence of gainful, fulltime (with overtime) employment, medical benefits and permanent resident status, with the specific intention of gaining an unjust advantage over Plaintiffs.

60.   Defendants' actions were a deliberate attempt to aggrieve the feelings of Plaintiffs, thus justifying an award of non-pecuniary damages unto Plaintiffs.

61.   The nature of the contract between Plaintiffs and FSS was intended to gratify a non-pecuniary interest, as well as a pecuniary interest, justifying an award of non-pecuniary damages unto Plaintiffs.

62.   Damages.  Plaintiffs have been damaged by the conduct of Defendants detailed at Count II, as a direct result of the fraudulent inducement into the employment contract and the multiple breaches of contract detailed herein, which damages exceed $75,000.00 per Plaintiff.


## COUNT III – R.I.C.O.

63.   Paragraphs one (1) through forty-nine (49) are incorporated herein by reference.

10

64.  Defendant FSS is a "person" as that term is defined in 18 U.S.C. § 1961(3) because it is a corporation capable of holding a legal or beneficial interest in property.

65.  Defendant Chandler is a "person" as that term is defined in 18 U.S.C. § 1961(3) because he is an individual capable of holding a legal or beneficial interest in property.

66.  Defendant Labor Consultants International, Inc., is a "person" as that term is defined in 18 U.S.C. § 1961(3) because it is a limited liability corporation capable of holding a legal or beneficial interest in property.

67.  Defendant Forrester is a "person" as that term is defined in 18 U.S.C. § 1961(3) because he is an individual capable of holding a legal or beneficial interest in property.

68.  Defendant NTS Skillforce Resources is a "person" as that term is defined in 18 U.S.C. § 1961(3) because it is an unincorporated entity capable of holding a legal or beneficial interest in property.

69.  Defendant Singh is a "person" as that term is defined in 18 U.S.C. § 1961(3) because he is an individual capable of holding a legal or beneficial interest in property.

70.  Defendant Comerford Enterprises is a "person" as that term is defined in 18 U.S.C. § 1961(3) because it is an unincorporated entity capable of holding a legal or beneficial interest in property.

71.  Defendant FSS is an "enterprise" as that term is defined in 18 U.S.C. § 1961(4) because it is a corporation organized and existing under the laws of the State of Mississippi.

72.  Defendants have engaged in a "racketeering activity" as defined in 18 U.S.C. § 1961(1)(B) by committing acts indictable under 18 U.S.C. §§ 1581, 1546, 1961, 1951, 1952, 1956, 1957 and 8 U.S.C. § 1324.

73.   Defendants have engaged in a "pattern of racketeering activity" in connection with the racketeering scheme commencing with the false representations and promises of gainful employment and permanent residence status in the United States and culminating with Plaintiffs destitute financial situation and facing of possible deportation, all for the financial gain of the racketeer Defendants as that term is defined in 18 U.S.C. § 1961(5) because they have committed at least one thousand (1,000) separate and systematic acts of racketeering activity, all of which occurred after the effective date of Chapter 96 of Title 18 of the United States Code and the last of which occurred within ten years after the commission of the first act.

74.   All one thousand (1,000) or more predicate acts have occurred since 2000.

75.   The racketeering activity (commission of predicate acts), which forms the basis of Count III, are related and amount to a continuing pattern of criminal racketeering activity; the acts have an identical purpose (to carry out Defendants' racketeering scheme); result (to bilk Plaintiffs out of money and property); victims (Plaintiffs); method of commission (the scheme); and are otherwise interrelated by distinguishing characteristics rather than isolated unrelated events.

76.   The nature of the predicate acts and the present status of Plaintiffs (facing deportation) is such that these predicate acts have caused and present a long term threat of criminal activity with resultant harm to Plaintiffs.

77.   Moreover, the predicate acts were committed in the same manner and with the same purpose and constitute Defendants normal way of doing business.

78.     On information and belief, FSS at one time was a legitimate thriving business; now its legitimate business activities have been completely subsumed and displaced at the direction and control of the Defendants who use FSS as a racketeering enterprise.

79.     The continuity and relatedness of the predicate acts to the overall racketeering scheme constitutes a pattern of racketeering activity as contemplated by 18 U.S.C. § 1961(5).

80.     Defendants have violated 18 U.S.C. § 1962(a) because they have received income, directly or indirectly, through a pattern of racketeering activity and have used that income or its proceeds to operate an enterprise (FSS) engaged in interstate commerce.

81.     Defendants have violated 18 U.S.C. § 1962(b) because they have, through a pattern of racketeering activity, maintained, directly or indirectly, an interest in or control of an enterprise (FSS) which is engaged in, or the activities of which affect, interstate commerce.

82.     Defendants have violated 18 U.S.C. § 1962(c) because they are either employed by or associated with an enterprise (FSS) engaged in, or the activities of which affect, interstate commerce and have, directly or indirectly, conducted or participated in the conduct of an enterprise's affairs through a pattern of racketeering activity.

83.     Defendants have violated 18 U.S.C. § 1962(d) because they have conspired with one another to violate the provisions of 18 U.S.C. §§ 1962(a), (b) and (c).

### Conspiracy

84.     Defendants entered into an agreement to operate FSS as a racketeering enterprise, and each agreed to commit, and did participate in the commission of, at least two related predicate acts of racketeering.

85.    An essential part of the racketeering scheme was secrecy to avoid detection of the scheme by United States Immigration officials or Plaintiffs.

86.    The Defendants agreed among themselves to conceal the racketeering scheme and the wrongful acts described herein.

87.    The Defendants agreed among themselves to commit the predicate acts, with each individual Defendant knowing of the nature, details and scope of the racketeering scheme, the objectives of the scheme and participating in and facilitating the scheme.

88.    Moreover, each of the Defendants profited from the scheme, which profits flowed directly from money illegally taken from Plaintiffs.

89.    Defendants conspired to derive, and did derive, substantial proceeds from the above described pattern of racketeering activity, and conspired to use and invest, and actually used and invested, such proceeds in the operation of FSS.

90.    Particularly, Defendants used ill-gotten gains to continue bringing additional workers from India (also named Plaintiffs), including paying for transportation from India and paying for housing, thus further depressing job opportunities and depressing Plaintiffs' wages or potential wages.  This damage is in addition to the actual damages caused by the predicate acts of racketeering.

91.    Defendants conspired to maintain an interest in FSS, a racketeering enterprise, through the pattern of racketeering activity described herein.

**Injury**

92.    Plaintiffs have been, and continue to be, injured in their business and property by reason of Defendants pattern of racketeering activity;  as a direct and proximate result of

Defendants' complained of acts, Plaintiffs have suffered lost wages, damages due to defalcation and conversion, and other damages which will be shown at trial.

93.     Moreover, by reason of Defendants' violation of 18 U.S.C. § 1962(a), Plaintiffs have been, and continue to be, damaged in their business and property by reason of Defendants' use and investment of income derived from the pattern of racketeering activity.

94.     Plaintiffs wages have been (and are) depressed as a result of the flood of laborers induced by Defendants to "work" for FSS in Louisiana pursuant to the H2B visa program. Defendants have invested and used income derived from the racketeering scheme to maintain FSS as a viable corporation in order to recruit and sponsor additional laborers from India, including paying for travel and housing to bring these workers from overseas. Moreover, Plaintiffs have been damages as a result of lost opportunity because the more workers sponsored by FSS, the smaller the number of jobs that are available. The result is a depressed labor market for Plaintiffs' services.

### Predicate Acts of Racketeering

95.     <u>Money Laundering</u>. The Defendants, as part and parcel of the racketeering scheme perpetrated against Plaintiffs, violated the provisions of 18 U.S.C. § 1956(a)(1)(A)(1), 1956(a)(1)(B)(1) and 1957, through the following course of conduct;

        (i)     The Defendants, knowing that a monetary transaction involved the proceeds of felonious activity (the racketeering scheme), did knowingly, intentionally and willfully conduct and cause to be conducted hundreds of monetary transactions by financial institutions engaged in, and the activities of which affect, interstate and foreign commerce; to wit: (1)

deposit of fees fraudulently obtained from Plaintiffs into a financial institution(s); (2) wire transfer of these ill-gotten gains between the Defendants to distribute fruits of the racketeering scheme; (3) deposit, negotiation and drawing of checks involving illegal fees skimmed by Defendants from Plaintiffs' pay for work at Quality Shipyards (including but not limited to the use of third party bank accounts of Lomco, Inc., and Quality Shipyards, L.L.C., to accomplish this skimming); and, (4) deposit and issuance of checks to Plaintiffs drawn upon Defendants' own bank;

(ii)   Defendants conducted or caused to be conducted these monetary transactions involving criminally derived property knowing in fact that the source of these funds was unlawful and that the funds were actually derived from the knowing and intentional execution of the racketeering scheme detailed herein;

(iii)   Each monetary transaction was performed with the specific intent to promote, carry on and further the pattern of racketeering activity described herein, including use of these funds to purchase plane tickets, advance housing fees and advance meal/food costs – all necessary to continue the pattern of racketeering activity;

(iv)   Each monetary transaction was performed with the specific intent to hide, conceal from Plaintiffs and third parties and disguise the nature, location, source, ownership and control of the proceeds of the pattern of racketeering activity described herein; and,

16

(v)     Each monetary transaction involved criminally derived property with a
value in excess of $10,000.00, which sums were actually derived from the
pattern of racketeering activity described herein.

96.     <u>Peonage</u>:  The Defendants, as part and parcel of the racketeering scheme perpetrated
against Plaintiffs, violated the provisions of 18 U.S.C. § 1581(a), through the following
course of conduct;

(i)     The Defendants, knowingly, intentionally and with reckless disregard for
the rights of Plaintiffs, have held Plaintiffs in a condition of peonage, debt
bondage and involuntary servitude by subjecting Plaintiffs to compulsory
service to pay off fraudulently created "debts" for each Plaintiff, leaving
no alternative for Plaintiffs than to remain in the "employ" of FSS, subject
to the illegal skimming of fees by Defendants to pay off the false debt;

(ii)    The Defendants have misused the sponsorship of Plaintiffs pursuant to the
H2B visa program, as detailed herein, in furtherance of their racketeering
scheme directed at Plaintiffs and in violation of law, thus constituting
"state action," with FSS and later Comerford acting as the sponsor on each
Plaintiffs' work visa with all the rights and privileges granted by federal
law to an H2B sponsor.

97.     <u>Fraud in H2B Visa Process</u>.  The Defendants, as part and parcel of the racketeering
scheme perpetrated against Plaintiffs, violated the provisions of 18 U.S.C. § 1546(a) ¶ 4,
through the following course of conduct;

(i)     The Defendants knowingly, intentionally and willfully made false statements under oath and under penalty of perjury, subscribing as true the following material statements of fact;

      (1)     Plaintiffs would be employed by FSS;

      (2)     Plaintiffs would be paid a "prevailing wage" pursuant to the H2B visa requirements; and,

      (3)     There were no American workers available to fill the "jobs" FSS offered to Plaintiffs;

(ii)     In fact, these statements, made for the purpose of enticing Plaintiffs to travel to the United States and made for the purpose of convincing United States Immigration officials to grant Plaintiffs the legal right to live and work in the United States, were completely false.

98.     <u>Immigration Violations</u>. The Defendants, as part and parcel of the racketeering scheme perpetrated against Plaintiffs, violated the provisions of 8 U.S.C. §§ 1324(a)(1)(A)(iv) and (v), through the following course of conduct;

(i)     The Defendants knowingly, intentionally and willfully encouraged and induced Plaintiffs to come to, enter and reside in the United States and particularly to come to, enter and reside in the Eastern District of Louisiana, knowing and in reckless disregard of the fact that Plaintiffs coming to, entering and residing was in violation of law. Specifically, Plaintiffs entered and reside in the United States under the H2B work permits unlawfully obtained by Defendants as detailed herein.

     (ii)    The Defendants have conspired to commit the acts described above and have aided and abetted the commission of these unlawful acts.

99.    <u>Travel Act Violations</u>.  The Defendants, as part and parcel of the racketeering scheme perpetrated against Plaintiffs, violated the provisions of 18 U.S.C. § 1582(a)(3), through the following course of conduct;

     (i)    The Defendants knowingly, intentionally and willfully engaged in travel in interstate and foreign commerce with specific intent to promote, manage, establish, carry on, or otherwise facilitate the promotion management or carrying on of an unlawful activity, to wit: the racketeering scheme detailed herein (including money laundering) and violation of La. R.S. 14:73 [Commercial Bribery], 14:66 [Extortion]; 14:66 [Blackmail], and 14:67 [Theft/Larceny];

     (ii)    The Defendants knowingly, intentionally and willfully caused the Plaintiffs to engage in travel in interstate and foreign commerce with specific intent to promote, manage, establish, carry on, or otherwise facilitate the promotion management or carrying on of an unlawful activity, to wit: the racketeering scheme detailed herein (including money laundering) and violation of La. R.S. 14:73 [Commercial Bribery], 14:66 [Extortion], 14:66 [Blackmail] and 14:67 [Theft/larceny].

100.    <u>Hobbs Act Extortion</u>.  The Defendants, as part and parcel of the racketeering scheme perpetrated against Plaintiffs, violated the provisions of 18 U.S.C. § 1951(a), through the following course of conduct;

(i)     The Defendants, knowingly, intentionally and willfully obstructed, delayed and affected interstate and foreign commerce by extortion, bribery, blackmail, coercion and threats of physical violence against Plaintiffs in furtherance of the racketeering scheme detailed herein, for the purpose of obtaining money from Plaintiffs without Plaintiffs' valid consent; Plaintiffs turned over money and property after being induced by Defendants through this unlawful conduct.

101.    <u>Damages</u>.  Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to actual compensatory and special damages at the rate of threefold the amount of actual damages determined by the jury.

## IV.  ATTORNEYS' FEES AND COSTS

102.    As a result of the conduct of Defendants described above, Plaintiffs have had to place this matter in the hands of their attorneys and have agreed to pay them a reasonable fee to prosecute this case.  Plaintiffs are entitled and seek to recover attorneys' fees and costs associated with prosecution of this case.

## V.  CONDITIONS PRECEDENT

103.    All conditions precedent to the granting of relief to Plaintiffs have been performed, have occurred, are excused, or have been waived.

## VI.  JURY TRIAL

104.    Plaintiffs request a trial by jury.

## VII.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that Defendants be cited to answer and

appear herein and that upon final hearing, the Court grant Plaintiffs the following relief:

    (i)      divestment by Defendants of any interest, direct or indirect, in FSS or any of its

           successors or similar businesses;

    (ii)     dissolution and liquidation of FSS and any of its related or similar business

           operations;

    (iii)    general and special compensatory damages;

    (iv)    exemplary damages;

    (v)     treble damages;

    (vi)    costs of court, including reasonable attorneys fees;

    (vii)   prejudgment and post-judgment interest according to law; and,

    (viii)  such other relief, either general or special, at law or in equity, to which Plaintiffs

           may be entitled.

                          Respectfully submitted,

                          B. Kent Felty, T.A. (OBA #15702)
                          LAW OFFICES OF B. KENT FELTY
                          1405A Jefferson Ave.
                          New Orleans, Louisiana70115
                          Phone: (504) 895-1525
                          Fax:    (504) 895-1589
                          *Pro Hac Vice for Plaintiffs*

Brent D. Burley (LA Bar #22744)
FENET & ANDERSON, A.P.L.L.C.
8641 United Plaza Blvd., Suite 200
Baton Rouge, LA  70809
Phone: (225) 926-5500
Fax:    (225) 926-5577

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has been served upon all counsel of record via U.S. Mail, postage prepaid, this 14th day of June, 2004.

BRENT D. BURLEY