United States Court of Appeals
Fifth Circuit
**F I L E D**
February 26, 2007
Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 05-30860

---

ROY ABRAHAM; ET AL.,

        Plaintiffs,

ROY ABRAHAM; JACOB GEORGE; CICIL ANTONY AKKARA; APPALA RAJU ALLIPILLI; SAMUEL KUTTY AMPAZHATHUMMOOTIL; ET AL.,

        Plaintiffs-Appellants,

versus

B J SINGH, individually etc; ET AL.,

        Defendants,

CHAD CHANDLER, individually; FALCON STEEL STRUCTURES, INC.,

        Defendants-Appellees.

---

On Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:04-CV-44

---

Before JONES, Chief Judge, and WIENER and BARKSDALE, Circuit Judges.

EDITH H. JONES, Chief Judge:

    What began with promising hopes for employment in the United States culminated in this RICO lawsuit by Indian citizens who were recruited under false pretenses to become steelworkers in Louisiana. The Plaintiffs appeal the district court's Federal Rule of Civil Procedure 12(b)(6) dismissal of their claim that Defendants violated the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. Because the Plaintiffs have adequately pled a pattern of racketeering activity and stated claims under 18 U.S.C. § 1962(c) and (d), we REVERSE the dismissal of their RICO claim and REMAND for further proceedings.

## I.  BACKGROUND

According to the allegations in a lengthy complaint, the Plaintiffs were recruited by Chad Chandler between November 2000 and December 2002 to travel to the United States to work for his company, Falcon Steel Structures, Inc. ("Falcon Steel"). To persuade Plaintiffs to travel to the United States, Chandler allegedly made various misrepresentations regarding the terms of their employment and permanent resident status. Among other things, Chandler promised the Plaintiffs full-time employment for at least two years at Falcon Steel. Defendants obtained H2B visas for Plaintiffs, which they allege bound them to Falcon Steel, and arranged their transportation from India to Houma, Louisiana. In return, each Plaintiff paid Chandler between $7,000 and $20,000, often by obtaining loans in India at high interest rates.

Upon arriving in the United States, Plaintiffs found that things were not as promised. Contrary to what they had been told, Falcon Steel was not a manufacturing facility and had no jobs for them. Defendants confiscated their passports and housed them in poor conditions with little food. Chandler threatened Plaintiffs with punitive measures for complaining about the lack of employment

or food. Plaintiffs were limited in their ability to find other work because of their limited-purpose visas, and those who inquired about employment elsewhere were threatened with imprisonment and deportation. Those Plaintiffs who found other employment, often by being "farmed out" by Falcon Steel, were assessed arbitrary fees and had their wages skimmed. Chandler also demanded an additional $5,000 for the already promised permanent resident status.

Defendants continued their unlawful scheme, Plaintiffs alleged, until this lawsuit was filed in January 2004. Plaintiffs sued Chandler and Falcon Steel, alleging human trafficking, state law claims of breach of contract and fraudulent inducement, and RICO violations. The alleged racketeering acts included money laundering, peonage, visa fraud, immigration violations, Travel Act violations, and Hobbs Act extortion. As required by local rules, Plaintiffs prepared a precisely worded RICO statement.

Defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted. Concluding that the Plaintiffs had not shown that the predicate acts posed a threat of continuing racketeering activity, the district court granted the motion, dismissed the RICO claim, and declined to exercise supplemental jurisdiction over Plaintiffs' state-law claims. Plaintiffs now appeal.[1]

---

[1] Plaintiffs do not appeal the district court's dismissal of their human-trafficking claim.

## II. STANDARD OF REVIEW

This court reviews <u>de novo</u> the district court's dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). <u>Nolen v. Nucentrix Broadband Networks Inc.</u>, 293 F.3d 926, 928 (5th Cir. 2002). We accept all of the Plaintiffs' allegations as true and uphold the district court's dismissal "only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." <u>Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer</u>, 90 F.3d 118, 122 (5th Cir. 1996) (quoting <u>Rubinstein v. Collins</u>, 20 F.3d 160, 166 (5th Cir. 1994)); <u>Crowe v. Henry</u>, 43 F.3d 198, 203 (5th Cir. 1995).

## III. DISCUSSION

### A. Pattern of Racketeering Activity

Plaintiffs allege that Defendants violated 18 U.S.C. § 1962(a), (b), (c), and (d). These RICO subsections state, in their simplest terms, that:

(a) a person who has received income from a pattern of racketeering activity cannot invest that income in an enterprise;
(b) a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering;
(c) a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a pattern of racketeering activity; and
(d) a person cannot conspire to violate subsections (a), (b), or (c).

4

Crowe, 43 F.3d at 203. Regardless of subsection, RICO claims under § 1962 have three common elements: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." Word of Faith, 90 F.3d at 122 (quoting In re Burzynski, 989 F.2d 733, 741-42 (5th Cir. 1993)).

As in Word of Faith, the central issue in this appeal is whether the Plaintiffs adequately pled a "pattern of racketeering activity." See id. "Racketeering activity" consists of two or more predicate criminal acts that are (1) related and (2) "amount to or pose a threat of continued criminal activity." Id. (citing H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239, 109 S. Ct. 2893, 2900 (1989)).

The district court assumed that the Plaintiffs had sufficiently alleged that the predicate acts were related. Addressing the continuity prong, however, the court found that the predicate acts did not pose a threat of continuing racketeering activity. We, too, need only address the continuity prong of the analysis.

In H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 109 S. Ct. 2893 (1989), the Supreme Court held, "[c]ontinuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or past conduct that by its nature projects into the future with a threat of repetition." Id.

at 241, 109 S. Ct. at 2902. Plaintiffs have alleged open-ended continuity, which can be shown by demonstrating either that the predicate acts establish a "specific threat of repetition extending indefinitely into the future" or "that the predicates are a regular way of conducting the defendant's ongoing legitimate business." Word of Faith, 90 F.3d at 122 (quoting H.J. Inc., 492 U.S. at 242-43, 109 S. Ct. at 2902). As the Court noted in H.J. Inc., "Congress was concerned in RICO with long-term criminal conduct." 492 U.S. at 242, 109 S. Ct. at 2902.

Nevertheless, "[i]t is unnecessary to delve into the arcane concepts of a closed-end or open-ended continuity under RICO" in cases "where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction," for in such cases, "a 'pattern of racketeering activity' has not been shown." Word of Faith, 90 F.3d at 123. For example, in Word of Faith, we held that a church had failed to satisfy the continuity requirement where the church alleged predicate acts involving the production of television news programs that were part of a single, lawful endeavor. Id.

Following Word of Faith, the district court found that the Plaintiffs' RICO claim failed for lack of continuity because the only adequately alleged predicate acts took place in the context of the Plaintiffs' recruitment and entry into the United States. The court reasoned that, as in Word of Faith, the

Defendants' actions were part of a single transaction because the predicate acts — recruiting, collecting fees, and obtaining fraudulent visas — all took place in the past. The court concluded that the predicate acts neither threatened long-term criminal activity nor constituted Defendants' regular way of conducting their business.

In light of the liberal pleading standard with which the Plaintiffs' allegations must be viewed, see Jones v. Bock, 127 S. Ct. 910, 919 (2007), the district court erred in turning the Supreme Court's explanation of the continuity prong into a stringent pleading requirement. See Whelan v. Winchester Prod. Co., 319 F.3d 225, 231 (5th Cir. 2003); see also H.J. Inc., 492 U.S. at 241, 109 S. Ct. at 2902 ("[Showing continuity] may be done in a variety of ways, thus making it difficult to formulate in the abstract any general test for continuity. We can, however, begin to delineate the requirement."). For pleading purposes, we must determine whether a pattern of racketeering has been alleged that is sufficiently similar to what the Supreme Court contemplated in its H.J., Inc. discussion and what this Court has held to constitute a pattern of racketeering activity. At this early stage, a plaintiff's burden is not tied to the precise language that the Supreme Court used but to the Court's general explanation of the statute. Thus, the Court itself provided examples of how the continuity element may be satisfied and cautioned that the

analysis "depends on the specific facts of each case . . . [and] cannot be fixed in advance with such clarity that it will always be apparent." Id. at 242-43, 109 S. Ct. at 2902.

Based on these standards, Plaintiffs have sufficiently pled "a continuity of racketeering activity, or its threat." Id. at 241, 109 S. Ct. at 2902. The Plaintiffs did not allege predicate acts "extending over a few weeks or months and threatening no future criminal conduct." Id. at 242, 109 S. Ct. at 2902. Rather, they alleged that the Defendants engaged in at least a two-year scheme involving repeated international travel to convince up to 200 or more Indian citizens to borrow thousands of dollars to travel to the United States only to find upon their arrival that things were not as they had been promised. See, e.g., United States v. Delgado, 401 F.3d 290, 298 (5th Cir. 2005); Abell v. Potomac Ins. Co., 946 F.2d 1160, 1168 (5th Cir. 1991). Moreover, the allegations include not just Plaintiffs' recruitment in India but also their treatment in the United States. Unlike our precedents identifying a single illegal transaction, there are multiple victims, and there is no reason to suppose that this systematic victimization allegedly begun in November 2000 would not have continued indefinitely had the Plaintiffs not filed this lawsuit. Cf. Word of Faith, 90 F.3d at 123; In re Burzynski, 989 F.2d 733, 743 (5th Cir. 1993); Calcasieu Marine Nat'l Bank v. Grant, 943 F.2d 1453, 1464 (5th Cir. 1991); Howell Hydrocarbons,

8

Inc. v. Adams, 897 F.2d 183, 193 (5th Cir. 1990); Delta Truck & Tractor, Inc. v. J.I. Case Co., 855 F.2d 241, 244 (5th Cir. 1988).

After a careful review of the complaint, we are confident that the allegations satisfy the liberal pleading standard and allege continuity of racketeering activity. The district court erred in granting the Defendants' motion to dismiss on this basis.

### B.  Violations of 18 U.S.C. § 1962(a), (b), (c), and (d)

Defendants also contend that the Plaintiffs have failed to adequately allege violations of the RICO subsections. See Crowe, 43 F.3d at 205. We agree that the complaint fails even the liberal pleading standard for subsections (a) and (b), but Plaintiffs have adequately alleged violations of subsections (c) and (d).

### 1.  18 U.S.C. § 1962(a)

To state a claim under subsection (a), a plaintiff must allege an injury from "the use or investment of racketeering income." St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 441 (5th Cir. 2000) (citations omitted). An injury arising "solely from the predicate racketeering acts themselves is not sufficient." Nolen, 293 F.3d at 929. In this case, Plaintiffs have alleged nothing more than that their injuries were caused by the Defendants' "use and investment of income derived from the pattern of racketeering activity." Plainly, Plaintiffs' alleged injuries stem not from the use or investment of racketeering income, but

9

from the Defendants' alleged predicate acts of visa fraud, immigration violations, Travel Act violations, and money laundering. See id. at 929-30; Williamson, 224 F.3d at 441; cf. Crowe, 43 F.3d at 205. Conclusory allegations are insufficient to state a claim under § 1962(a). See Nolen, 293 F.3d at 928; Whelan, 319 F.3d at 230.

### 2.   18 U.S.C. § 1962(b)

We have interpreted subsection (b) as stating that "a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering." Crowe, 43 F.3d at 203. Plaintiffs must show that their injuries were "proximately caused by a RICO person gaining an interest in, or control of, the enterprise through a pattern of racketeering activity." Id. at 205. Plaintiffs, again in conclusory terms, averred that the Defendants "have, through a pattern of racketeering activity, maintained . . . an interest in or control of an enterprise." Their complaint describes no facts that would show a causal relationship between their injuries and the Defendants' acquisition or maintenance of an interest in the enterprise. See id. at 205 ("there must be a nexus between the claimed RICO violations and the injury suffered"); Old Time Enters., Inc. v. Int'l Coffee Corp., 862 F.2d 1213, 1219 (5th Cir. 1989). Because of this critical deficiency, Plaintiffs' § 1962(b) claim must be dismissed.

### 3.   18 U.S.C. § 1962(c)

Subsection (c) prohibits any "'<u>person</u> employed by or associated with any <u>enterprise</u>' from participating in or conducting the affairs of the enterprise through a pattern of racketeering activity." <u>Crowe</u>, 43 F.3d at 205 (emphasis in original). To state a claim under subsection (c), a plaintiff must demonstrate, <u>inter alia</u>, that the RICO person is distinct from the RICO enterprise. <u>Id.</u> at 205-06; <u>Whelan</u>, 319 F.3d at 229. In this case, Plaintiffs have identified Chandler as the RICO person and Falcon Steel as the RICO enterprise. This allegation is sufficient to demonstrate that the RICO person, an individual employee of the corporation, is distinct from the RICO enterprise, the corporation itself. <u>See Cedric Kushner Promotions, Ltd. v. King</u>, 533 U.S. 158, 163, 121 S. Ct. 2087, 2091 (2001) ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity"); <u>Williamson</u>, 224 F.3d at 447; <u>see also</u> <u>Khurana v. Innovative Health Care Sys., Inc.</u>, 130 F.3d 143, 156 (5th Cir. 1997), <u>vacated on other grounds</u>, <u>Teel v. Khurana</u>, 525 U.S. 979, 119 S. Ct. 442 (1998). Accordingly, Plaintiffs have alleged sufficient facts to state a claim under § 1962(c).

### 4.   18 U.S.C. § 1962(d)

Plaintiffs have also alleged that Defendants conspired to violate § 1962(a), (b), and (c). "[B]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege

11

specifically such an agreement." Crowe, 43 F.3d at 206 (quoting Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1140 (5th Cir. 1992)). Plaintiffs specifically alleged that the Defendants entered into an agreement and that each agreed to commit at least two predicate acts of racketeering. These allegations are specific enough to state a claim that the Defendants conspired to violate § 1962(c).

## IV. CONCLUSION

For the reasons stated above, we conclude that the Plaintiffs adequately pleaded violations of 18 U.S.C. § 1962(c) and (d) but not § 1962(a) and (b). We express no view on the ultimate determination of the Defendants' liability. In a related matter, we are confident that, on remand, the district court will reconsider its decision to decline supplemental jurisdiction over the Plaintiffs' state law claims. Accordingly, we REVERSE the district court's order dismissing Plaintiff's RICO claim and REMAND to the district court for further proceedings.

**REVERSED and REMANDED.**